Harry and Eugenia Gromacki v. Commissioner. Harry Gromacki v. Commissioner.
Gromacki v. Commissioner
Docket Nos. 880-62, 881-62, 3704-62, 3705-62.
United States Tax Court
T.C. Memo 1964-292; 1964 Tax Ct. Memo LEXIS 47; 23 T.C.M. (CCH) 1785; T.C.M. (RIA) 64292; November 9, 1964
Maurice Weinstein, 623 N. 2nd St., Milwaukee, Wis., for the petitioners. Dennis J. Conlon and Robert M. Burns, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes and additions to tax for the years and in the amounts as follows: Additions to Tax - 1939
Code
Sec. 294
Year
Deficiency
(d)(1)(A)
Sec. 293(b)
Harry Gromacki
1950
$2,452.80
$239.40
$1,226.40
Harry Gromacki
1951
1,047.60
123.98
523.80
Harry Gromacki
1952
1,453.79
134.17
726.90
Harry and Eugenia Gromacki
1953
2,352.95
None
1,176.48
*48 Additions to Tax - 1954 Code
Year
Deficiency
Sec. 6653(b)
Harry Gromacki
1954
$5,880.86
$3,048.16
Harry and Eugenia Gromacki
1955
6,371.21
3,185.61
Harry and Eugenia Gromacki
1956
12,886.61
6,443.31
Harry and Eugenia Gromacki
1957
6,104.86
3,052.43
The issues for decision are: (1) Whether the addition to tax under the provisions of sections 293(b) of the Internal Revenue Code of 1939 and 6653(b) of the Internal Revenue Code of 1954 was properly asserted against petitioners for each of the years 1950 through 1957. (2) Whether respondent was correct in computing petitioners' taxable income for each of the years 1950 through 1953 on the net worth plus expenditures basis and for the years 1954 through 1957 on the bank deposits plus cash expenditures basis. (3) Whether assessment of deficiencies in income tax and additions to the tax for each of the years 1950 through 1956 may be made under the provisions of section 276(a) of the Internal Revenue Code of 1939 or the corresponding provision of section 6501 of the Internal Revenue Code of 1954. (4) Whether the Federal income tax return *49 filed by petitioners for each of the years 1954 through 1956 understated gross income in an amount in excess of 25 percent of the gross income reported so as to make the 6-year statute of limitations provided for in section 6501(e) of the Internal Revenue Code of 1954 applicable to those years. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, Harry Gromacki and Eugenia Gromacki, residing in Milwaukee, Wisconsin, filed joint Federal income tax returns for the taxable years 1953, 1955, 1956, and 1957 with the district director of internal revenue at Milwaukee, Wisconsin. Harry Gromacki filed individual Federal income tax returns for the taxable years 1950, 1951, 1952, and 1954 with the district director of internal revenue at Milwaukee, Wisconsin. All the returns were filed on or before the date prescribed by statute by which they should be filed. On January 30, 1961, petitioners executed a waiver of the statutory period for assessment, Form 872, whereby the assessment of a deficiency for the taxable year 1954, pursuant to section 6501(c)(4) of the Internal Revenue Code of 1954, was *50 extended to December 31, 1961. On January 30, 1961, petitioners executed a waiver, Form 872, for the taxable year 1957 extending the statutory period for assessment of a deficiency for that year to December 31, 1961. Each of these waivers was signed on behalf of respondent on February 1, 1961. Harry Gromacki (hereinafter referred to as petitioner) during the years 1950 to 1957, inclusive, operated a coin machine business in and around Milwaukee, Wisconsin, under the name of H & G Amusement Company and H & G Music. The machines which petitioner owned, consisting of pinball machines and juke boxes, were placed at various locations in the Milwaukee area. The rental petitioner received from these machines was determined upon a percentage of the receipts of the machines. During the years in issue petitioner controlled and personally participated in conducting the business. He determined where the machines would be located and negotiated with the location owners for the installation of the machines. He hired and fired employees. He approved bills for payment, determined what machines would be purchased and where they would be purchased and directed the employees in the performance of *51 their duties. He also helped in moving machines and in making money collections from the machines. Collections from the machines which had been placed at the various locations were made by petitioner or a collector employed by him. A collector would go to the place where each machine was located either once a week or once every two weeks, take the money from the coin box in the machine, count it with the owner of the business where the machine was located, divide the coins taken from each machine with the owner of the establishment where the machine was located, and give the owner a receipt for the money taken from the machine. This receipt would show both the owner's and petitioner's share of the receipts. The collector retained a duplicate copy of the receipt and collectors other than petitioner turned this receipt over to petitioner. Petitioner would check the money turned over to him by other collectors against the duplicate receipt. Petitioner purchased equipment from Paster Distributing Company, S. L. London Music Company, Hastings Distributing Company, P. & P. Distributing Company, Donan Distributing Company, Purveyor Distributing Company and National Coin Machine Company. *52 He also purchased records for his juke box machines from Music Mart, Inc. When these purchases were made, petitioner received invoices showing the items which he had purchased and the purchase price thereof. Petitioner kept these invoices for the years 1950 to 1957. During the years 1949 through 1957, inclusive, petitioners Harry and Eugenia Gromacki maintained a checking account at the Holton Street State Bank, 500 East Center Street, Milwaukee, Wisconsin. This checking account was used for both business and personal purposes. Petitioners made deposits to this checking account for the years 1954 to 1957, inclusive, as follows: Transfers
No
from other
Deposit
Year
Checks
Coin
Currency
Accounts
Slip
Total
1954
$ 4,025.29
$ 3,706.00
$9,049.00
$ 550.00
$1,793.55
$19,163.84
1955
8,403.09
20,186.50
8,931.00
4,790.00
833.30
43,143.89
1956
14,063.52
22,386.70
6,467.00
3,000.00
5,759.97
51,677.19
1957
27,544.81
24,029.00
9,164.00
0
1,802.67
62,540.48
During the years 1954 to 1957, inclusive, petitioners maintained a savings account at the Holton Street State Bank and made deposits therein for the years *53 1954 to 1957, inclusive, as follows: Year
Amount
1954
$ 255.50
1955
186.20
1956
2,981.51
1957
3.24
In 1955 petitioners opened a savings account at the Pulaski Savings and Loan Association, Milwaukee, Wisconsin, and made deposits into this account for the years 1955 to 1957, inclusive, as follows: Year
Amount
1955
$4,223.58
1956
4,663.27
1957
3.88
During the years 1954 to 1957, inclusive, petitioners transferred funds between their checking account and savings accounts as follows: Year
Date
Amount
Total
1954
2- 3-54
$ 150.00
$ 550.00
5-20-54
400.00
1955
6-17-55
2,000.00
6,790.00
1-10-55
2,500.00
11-28-55
500.00
9- 2-55
1,790.00
1956
1- 9-56
900.00
4,500.00
3-29-56
600.00
9-20-56
3,000.00
1957
None
In 1954 petitioner sold a lot which he owned for the amount of $1,850. In 1956 petitioner sold an automobile to an employee, Kenneth D. Conley, Jr., for $500, which amount petitioner received in that year. Petitioners withdrew from their savings account at the Pulaski Savings and Loan Association $1,500 on June 17, 1955, and $5,500 on September 20, 1956. Petitioners *54 also made a withdrawal of $3,000 from their savings account at the Holton Street State bank on September 20, 1956. In September 1955 petitioner loaned $2,500 to Martin and Estelle Burke. Repayments on the loan were made to petitioner in the amounts of $85 in 1955, $1,135 in 1956, and $200 or $300 in 1957. The loan to the Burkes was made by check. [1]
On April 12, 1957, petitioner loaned $1,000 in cash to Clarence E. Jones. On August 5, 1957, Jones made a payment to petitioner on this loan of $450. This payment was applied $350 to principal and $100 to interest. During 1957 petitioners loaned $900 by check to Catherine and Paul Gromacki. No payments were made on this loan during the year 1957. In 1957 petitioner loaned Kenneth C. La Vigne $1,821.79, of which amount La Vigne repaid petitioner $225 during the same year. [2]
*55 Petitioner loaned $1,500 to Anthony Lessaro in 1955. Lessaro repaid $300 of the amount during 1955. In 1956 petitioner loaned additional moneys to Lessaro and at the end of 1956 the total debt due to petitioner by Lessaro was $2,750. [3]
Petitioner made a loan by check of $500 to Leo Dinon in 1955. He received no payments on the loan in 1955. Petitioner loaned Dinon additional moneys in 1956 and at the end of 1956, Dinon owed $774.71 to petitioner. In 1957, petitioner loaned an additional $6,000 to Dinon and Dinon repaid $274.71 to petitioner during that year. During the year 1957, petitioner loaned $400 to Kenneth Conley, of which amount Conley repaid $100 during 1957. Petitioners on their income tax returns for the years 1954 to 1957, inclusive, listed the following as the total amounts expended for deductible items: *56 Year
Amount
1954
$ 8,683.85
1955
19,316.44
1956
25,936.63
1957
33,234.89
Petitioners wrote checks properly allocable to the following categories during the years 1954 to 1957, inclusive: Capital
Personal
Personal Life
Business
Year
Cash
Items
Expense
Insurance
Expense
Total
1954
$430.00
$11,242.43
$2,748.78
$ 270.39
$ 1,585.63
$16,277.23
1955
31.15
31,736.84
4,725.04
790.53
8,436.44
45,720.00
1956
628.89
31,906.58
6,155.31
1,352.99
11,766.47
51,810.24
1957
105.00
26,179.90
9,854.60
3,485.73
20,790.10
60,415.33
During the years 1954 to 1957, inclusive, petitioners paid the following amounts of business expenses in cash: Year
Amount
1954
$ 7,098.22
1955
10,880.00
1956
14,170.16
1957
12,444.79
During the years 1954 to 1957, inclusive, petitioner made payments to S. L. London Music Company as follows: During the years 1954 and 1957, petitioner made payments to Badger Novelty Company, as follows: Capital
Expense
Year
Items
Items
Cash
Check
1954
$950.00
None
$750.00
$200.00
1957
134.50
$18.95
14.20
139.25
Beginning
Capital
Expense
Year
Payable
Items
Items
1954
$1,075.00
$16,301.05
$ 831.74
1955
528.38
15,047.10
529.72
1956
615.72
24,376.60
1,075.55
1957
3,918.10
8,058.70
831.45
*57 Ending
Other
Year
Payable
Credits
Check
Cash
1954
$ 528.38
$6,018.80
$ 350.00
$11,310.61
1955
615.72
4,749.00
500.00
10,240.48
1956
3,918.10
5,458.70
None
16,691.07
1957
4,551.08
699.95
3,500.00
4,087.22
Petitioner made payments to Paster Distributing Company during the years 1954 to 1957, as follows: Beginning
Ending
Year
Payable
Capital
Expenses
Payable
1954
$5,908.50
$ 7,987.73
$220.76
$ 23.60
1955
23.60
33,267.50
426.80
1,430.09
1956
1,430.09
25,145.00
757.39
6,827.97
1957
6,827.97
13,085.00
677.02
3,741.13
Other
Year
Credits
Check
Cash
1954
$ 9,684.57
$ 500.00
$ 5,408.82
1955
24,139.00
None
10,148.81
1956
4,505.00
3,000.00
13,999.51
1957
175.00
4,500.00
12,173.86
Petitioner borrowed from Paster Distributing Company the amounts of $1,500 in 1954, $2,000 in 1955, and $1,000 in 1956. In 1955, petitioner purchased a 1955 Mercury custom station wagon for a total cash price of $3,091. Petitioner paid for the vehicle in that year, $2,691 by check and $400 by cash. In 1956, petitioner purchased a 1956 Lincoln automobile for $3,700. *58 The purchase price was paid during 1956 in cash. In 1957, petitioner purchased a 1957 Lincoln automobile for a price of $6,698. He traded in his 1956 Lincoln and was allowed $4,923 leaving a net balance of $1,775, which amount was paid in 1957, the amount of $430 by check and the balance of $1,345 by cash. In 1954, petitioners borrowed the following amounts from Reliable Finance Company for the purchase of capital items: Loan No
Principal
Interest
#C 1944
$2,000.00
$140.00
#C 1986
1,100.00
46.16
#C 2086
979.00
None
Petitioners repaid Reliable Finance Company in full during the year 1954. The total debt due, including interest was $4,265.16. The total amount was paid $3,025.14 by check and $1,240.02 by cash. During the year 1954, petitioners had two loans which he had obtained from A and A Credit Company, for the purchase of capital items as follows: Payment
Pay-
Balance
by Check
ments
Loan
due
during
by
No.
12/31/53
Loans
1954
Cash
6175-1
$4,077.50
None
$4,077.50
None
6944-1
None
$7,934.57
2,000.00
None
In 1955, petitioner paid the balance due on loan #6944-1 of $5,934.57. This amount *59 was paid entirely by check. In 1955, petitioner borrowed $23,285 from Auto Acceptance and Loan Corporation in order to purchase coin operated machines. During 1955 petitioner made payments of $9,710 by check and $971 by cash on this loan, leaving the December 31, 1955, balance at $12,604. In 1956, petitioner paid $11,652 on the loan from Auto Acceptance and Loan Corporation, leaving a December 31, 1956, balance of $952. Petitioner paid the $952 balance in 1957 by check. In 1956, petitioners borrowed $4,300 from Michael Buraczewski, Eugenia Gromacki's father. During 1956, petitioner purchased coin operated machines from Purveyor Distributing Company for the amount of $1,100. Petitioner paid the total amount due in 1956; $1,025 was paid by check and $75 was paid in cash. Petitioner in 1956 also paid $30 for expenses to Purveyor Distributing Company. In 1957, petitioner purchased capital items for the amount of $325 from Purveyor Distributing Company. This amount was paid by check in 1957. Petitioner made payments to P and P Distributing Company as follows: Beginning
Ending
Other
Year
Payable
Capital
Expense
Payable
Credits
Check
Cash
1956
None
$1,815.75
$233.95
None
None
$1,844.95
$204.75
1957
None
160.00
None
None
None
None
160.00
*60 During the year 1957, petitioner purchased capital items for the amount of $2,585 from Donan Distributing Company and incurred expenses of $147.49. Petitioner paid $2,642.49 by check and $90 in cash to Donan Distributing Company during 1957. During the year 1957, petitioner purchased capital items and made the following expenditures to National Coin Machine Company, 1411 W. Diversey Parkway, Chicago, Illinois: Capital Items
Expenses
Refund
$4,665.00
$122.92
$84.00
During 1957, petitioner paid National Coin Machine Company $3,853.92 by check and received other credits of $1,018 for that year. In 1956, petitioner purchased an apartment building at 2523-27 West Hopkins Street, Milwaukee, Wisconsin, for $26,500. During 1956, petitioner paid on the property $4,656.82 by check, $4,607.79 by cash, received another credit of $735.39, and obtained a mortgage from Pulaski Savings and Loan Association of $16,500. During the years 1956 and 1957 petitioner paid amounts to the Pulaski Savings and Loan Association incident to the mortgage on the West Hopkins Street property as follows: 1956
Items
Payments
Capital
Expense
Loan
Checks
Cash
Prepaid Real Estate taxes
$840.00
$ 840.00
Prepaid Insurance
261.03
$ 23.93
284.96
Prepaid Loan Costs
316.40
8.10
324.50
Prepaid Insurance
30.00
30.00
Mortgage Payments
273.48
246.27
$16,500.00
519.75
*61 1957
Items
Payments
Beginning
Ending
Balance
Capital
Expense
Balance
Checks
Cash
Mortgage
$16,226.52
None
$839.19
$14,882.71
$165.00
$2,018.00
Prepaid
None
$120.00
None
None
10.00
110.00
Insurance
Prepaid Real
None
840.00
None
None
70.00
770.00
Estate Tax
Petitioners had capital expenditures paid by cash during the years 1954 to 1957, inclusive, as follows: Year
Amount
1954
$18,670.79
1955
21,113.77
1956
39,994.90
1957
19,486.52
Petitioners had interest income from Pulaski Savings and Loan Association in 1955 to 1957, inclusive, as follows: Year
Amount
1955
$ 21.00
1956
68.67
1957
107.12
Petitioners received rental income during the years 1956 and 1957 as follows: Year
Amount
1956
$1,175.30
1957
4,200.50
In 1958, a cost of living statement on behalf of petitioners was filed with the Wisconsin Department of Taxation wherein it was stated that petitioners' estimated living expenses for the year 1957 were as follows: Food and Drink
$2,880.00
Clothing
720.00
Shelter
602.75
Utilities
420.00
Gifts
120.00
Education
266.00
Transportation
596.00
Recreation
195.00
Insurance
900.00
Miscellaneous
490.00
$7,189.75
*62 Petitioners had five children in 1950 and 1951, six children in 1952 and 1953, seven children in 1954 and 1955, and eight children in 1956 and 1957. Petitioner had total personal expenditures for the years 1950 through 1953 of $5,000, $5,500, $6,000, and $6,500, respectively. Petitioner had personal expenditures paid in cash of $3,600 for 1954 and $4,000 for each of the years 1955 through 1957. During the years 1954 to 1957, inclusive, petitioners paid the following personal expenses by check: Item
1954
1955
1956
1957
Contributions
$ 11.00
$ 77.50
$ 94.90
$ 427.80
Interest
48.47
Real estate taxes
421.01
508.85
531.44
548.99
State income taxes
75.16
71.82
93.26
398.72
Auto licenses
16.00
17.50
32.00
35.00
Medical expenses
116.00
318.76
442.20
675.50
Federal income taxes
410.21
222.86
400.00
1,941.69
Insurance
270.39
790.53
1,352.99
3,485.73
Department store and clothing
1,088.32
967.08
1,335.97
1,659.95
Heating
142.52
203.36
192.88
310.87
Food
183.35
212.08
76.15
84.72
Miscellaneous
606.78
863.67
772.75
940.21
Domestic help
151.50
365.45
Political contributions
100.00
Florida trip
1,010.00
Unidentified expenditures
201.60
1,260.56
1,932.26
685.44
Total
$3,542.34
$5,514.57
$7,508.30
$12,618.54
*63 Petitioners' Federal income tax returns for the years 1950 to 1957, inclusive, stated gross receipts from the coin machine business to be as follows: Year
Amount
1950
$11,028.46
1951
13,096.15
1952
17,270.85
1953
22,758.75
1954
34,966.57
1955
50,560.30
1956
78,170.50
1957
71,790.00
Petitioner recorded his business income, purchases, expenses and loans on large columnar worksheets. Petitioner's books and records also consisted of (1) bank statements and cancelled checks, (2) index card records showing the serial number, date of purchase, cost and location of petitioner's coin machines, and (3) duplicate route receipt books indicating the collections which had been made from the operation of the coin machines. Petitioners' Federal income tax returns for years 1950 to 1957, inclusive, were prepared by an accountant, William Wanta. Wanta prepared these returns from information furnished him by petitioner. The returns as filed for the years 1954 through 1957 reconciled with the figures contained on the columnar worksheets personally kept by petitioner except for minor mathematical errors. On December 15, 1958, at a conference relative to this case, *64 petitioner made available to respondent's agent his columnar worksheets, cancelled checks, and his bank statements, covering the years 1954 to 1957, inclusive. He did not make available the route sheets. Also at this conference the agent asked petitioner whether he had made loans to people other than Clarence Jones during the years 1950 to 1957. Petitioner responded in the negative but upon further questioning admitted making one additional loan during these years. Petitioner on his income tax returns claimed cost of goods sold for pinball games and depreciation deductions for phonographs for the years and in the amounts, as follows: Cost of
Phonograph
games
depreci-
Year
sold
ation
1950
$5,511.50
$ 58.35
1951
3,240.50
1,145.50
1952
4,291.75
2,458.12
1953
3,339.00
6,860.72
In 1953 petitioner purchased $10,150 of pinball games and $12,795 worth of phonograph machines. Petitioners had assets, liabilities, nondeductible expenditures and additional taxable income computed by the net worth method for the years 1950 through 1957, as follows: Statement of Net Worth
Years Ended December 31 -
Assets
1949
1950
1951
1952
Cash on hand
$ 100.00
$ 500.00
$ 1,000.00
$ 1,500.00
Cash in bank: Holton St. State
Bank -
Savings account
2.07
2.07
53.91
53.91
Checking account
3.49
737.67
447.27
274.25
Pulaski Sav. &
Loan Savings
account
Loans receivable:
Clarence E. Jones
Leo Dinon
Martin & Estelle
Burke
Anthony Lessaro
Kenneth La Vigne
Catherine
Gromacki
Kenneth Conley
Real estate: Land
1,675.00
1,675.00
1,675.00
1,675.00
Residence, 222 E.
11,000.00
11,000.00
11,000.00
Burleigh
Improvements
286.55
427.06
Garage
1,400.00
Apartment - 2523
W. Hopkins St.
(2523-27): Land
Building
Improvements
Office equipment
Automobiles: 1947 Nash
1,700.00
1,700.00
1951 Nash
2,383.33
2,383.33
1953 Nash
1955 Mercury
1956 Lincoln
1957 Lincoln
Tractor
115.00
115.00
115.00
Pinball games
5,720.00
12,137.25
16,584.25
18,484.25
Phonographic juke
700.00
4,582.00
9,632.50
boxes
Prepaid items: Insurance
Real estate taxes
Mortgage loan
costs
Carying charges
TOTALS
$9,200.56
$28,566.99
$38,127.31
$46,945.30
Accounts payable:
S.L. London Music
Co.
Paster
$ 201.80
$ 718.40
$ 2,458.95
$ 5,435.00
Distributing Co.
Purveyor
Distribt.
Loans payable: A & A Credit Co.
A & A Credit Co.
Auto Acceptance &
Loan
Holton St. State
Bank
Michael
Buraczewski
Mortgages
payable: Matthew P. Wrecza
5,000.00
2,750.00
1,800.00
Pulaski Savings &
Loan
Reserves for
depreciation: Autos and garage
204.00
513.83
455.83
958.23
Furniture and
fixtures
Pinball games
953.33
3,929.54
8,716.46
8,841.20
Phonographs
72.90
782.13
2,456.87
Apartment
building
Total Liabilities
$1,359.13
$10,234.67
$15,163.37
$19,491.30
Net Worth
$7,841.43
$18,332.32
$22,963.94
$27,454.00
*65 Statement of Net Worth
Years Ended December 31 -
Assets
1953
1954
1955
1956
1957
Cash on hand
$ 2,500.00
$ 2,500.00
$ 2,000.00
$ 2,000.00
$ 500.00
Cash in bank: Holton St. State
Bank -
Savings account
311.91
17.41
203.61
185.12
188.36
Checking account
107.67
2,994.28
280.67
117.12
1,968.39
Pulaski Sav. &
Loan Savings
account
933.58
96.85
100.73
Loans receivable:
Clarence E. Jones
650.00
Leo Dinon
500.00
774.71
6,500.00
Martin & Estelle
2,415.00
1,380.00
1,100.00
Burke
Anthony Lessaro
1,200.00
2,750.00
2,750.00
Kenneth La Vigne
1,951.38
Catherine
900.00
Gromacki
Kenneth Conley
300.00
Real estate: Land
1,675.00
Residence, 222 E.
11,000.00
11,000.00
11,000.00
11,000.00
11,000.00
Burleigh
Improvements
926.73
1,516.52
2,402.79
8,177.64
13,264.94
Garage
1,400.00
1,400.00
1,400.00
1,400.00
1,400.00
Apartment - 2523
W. Hopkins St.
(2523-27): Land
4,000.00
4,000.00
Building
22,500.00
22,500.00
Improvements
807.45
807.45
Office equipment
185.00
585.00
935.00
935.00
Automobiles: 1947 Nash
1951 Nash
2,383.33
2,383.33
1953 Nash
1,775.00
1955 Mercury
3,091.00
3,091.00
3,091.00
1956 Lincoln
3,700.00
1957 Lincoln
5,475.00
Tractor
115.00
115.00
115.00
115.00
115.00
Pinball games
22,217.00
30,860.00
33,312.26
35,774.01
46,943.51
Phonographic juke
21,927.50
31,880.00
51,475.27
77,249.08
77,769.38
boxes
Prepaid items: Insurance
291.03
816.05
Real estate taxes
840.00
886.18
Mortgage loan
316.40
283.95
costs
Carying charges
404.08
1,576.25
TOTALS
$64,564.14
$84,851.54
$113,093.26
$179,076.66
$206,196.32
Accounts payable:
S.L. London Music
$ 1,075.00
$ 528.38
$ 615.72
$ 3,918.10
$ 4,551.08
Co.
Paster
5,908.50
23.60
1,430.09
6,827.97
3,741.13
Distributing Co.
Purveyor
250.00
Distribt.
Loans payable: A & A Credit Co.
4,077.50
A & A Credit Co.
5,934.57
Auto Acceptance &
12,604.00
952.00
Loan
Holton St. State
5,000.00
Bank
Michael
4,300.00
Buraczewski
Mortgages
payable: Matthew P. Wrecza
1,200.00
Pulaski Savings &
16,226.52
14,882.71
Loan
Reserves for
depreciation: Autos and garage
1,460.63
1,963.03
835.76
1,273.69
1,818.65
Furniture and
16,94
65.44
158.48
268.48
fixtures
Pinball games
9,207.50
13,466.67
13,490.01
18,095.34
27,602.66
Phonographs
5,932.22
12,124.02
16,633.40
24,595.49
33,014.32
Apartment
230.38
1,162.68
building
Total Liabilities
$28,861.35
$34,057.21
$ 45,676.42
$ 76,827.97
$ 96,341.71
Net Worth
$35,702.79
$50,794.33
$ 67,416.84
$102,248.69
$109,854.61
*66 Computation of Corrected Taxable Income and Additional Taxable Income
Net Worth Method
Years ended December 31 -
1949
1950
1951
1952
Net worth
$7,841.43
$18,332.32
$22,963.94
$27,454.00
Less prior year's
7,841.43
18,332.32
22,963.94
net worth
Net worth
10,490.89
4,631.62
4,490.06
increase
Additional
5,500.00
6,000.00
personal exp.
(est.)
Additional
personal exp. (by
cash)
Personal
expenditures (by
check)
$15,490.89
$10,131.62
$10,490.06
Less adjustment -
50% capital gain
Corrected
$15,490.89
$10,131.62
$10,490.06
adjusted gross
income
Standard
500.00
500.00
deductions
Itemized
797.26
deductions
Exemptions
4,200.00
4,200.00
4,800.00
Taxable income -
10,790.89
5,431.62
4,892.80
corrected
Less taxable
1,190.15
1,617.39
166.31
income - reported
Additional
$ 9,600.74
$ 3,814.23
$ 4,726.49
taxable income
Computation of Corrected Taxable Income and Additional Taxable Income
Net Worth Method
Years ended December 31 -
1953
1954
1955
1956
1957
Net worth
$35,702.79
$50,794.33
$ 67,416.84
$102,248.69
$109,854.61
Less prior year's
$27,454.00
35,702.79
50,794.33
67,416.84
102,248.69
net worth
Net worth
8,248.79
15,091.54
16,622.51
34,831.85
7,605.92
increase
Additional
6,500.00
personal exp.
(est.)
Additional
3,600.00
4,000.00
4,000.00
4,000.00
personal exp. (by
cash)
Personal
3,542.34
5,514.57
7,508.30
12,618.54
expenditures (by
check)
$14,748.79
$22,233.88
$ 26,137.08
$ 46,340.15
$ 24,224.46
Less adjustment -
$ 57.26
75.95
50% capital gain
Corrected
$14,748.79
22,176.62
$ 26,137.08
$ 46,340.15
$ 24,148.51
adjusted gross
income
Standard
1,000.00
1,000.00
1,000.00
deductions
Itemized
847.94
1,458.98
deductions
Exemptions
4,800.00
5,400.00
5,400.00
6,000.00
6,000.00
Taxable income -
8,948.79
15,928.68
19,737.08
39,340.15
16,689.53
corrected
Less taxable
1,032.49
1,605.11
702.49
5,000.77
2,625.31
income - reported
Additional
$ 7,916.30
$14,323.57
$ 19,034.59
$ 34,339.38
$ 14,064.22
taxable income
*67 Petitioners had bank deposits, cash expenditures, and additional business receipts, computed under the bank deposits plus cash expenditures method for the years 1954 through 1957, as follows: Computation of Correct Gross Receipts
Year - 1954
DEPOSITS: Holton St. State Bank -
Checking account
$19,163.84
Savings account
255.50
$19,419.34
Less transfer between
$ 550.00
accounts
Loan - Paster Distributing
1,500.00
Co.
Proceeds, sale of lot - per
1,850.00
3,900.00
return
Net deposits from business
$15,519.34
receipts
Total outlays per return
8,683.85
Bank balance beginning of
year: Holton St. State Bank -
Checking account
$ 107.67
Savings account
311.91
$ 419.58
Deposits: Checking account
19,163.84
Savings account
255.50
19,419.34
19,838.92
Less: Bank balances end of
year
Holton St. State Bank -
Checking account
2,994.28
Savings account
17.41
3,011.69
16,827.23
Withdrawals, savings account
550.00
Total checks written
16,277.23
Less: Checks to cash
430.00
Capital items
11,242.43
Personal expenses
2,748.78
Personal life insurance
270.39
14,691.60
Total checks written against
1,585.63
outlays
Total expenses paid by cash
7,098.22
Add capital items paid by
18,670.79
cash
Personal expenses paid by
3,600.00
22,270.79
cash (estimated)
Corrected gross receipts
44,888.35
Less: Gross receipts reported
34,966.57
Unreported gross receipts
$ 9,921.78
Computation of Correct Gross Receipts
Year - 1955
DEPOSITS: Holton St. State Bank -
Checking account
$43,143.89
Less: Checks returned
137.50
$43,006.39
Holton St. State Bank -
Savings account
186.20
Pulaski Savings & Loan -
Savings account
4,223.58
$47,416.17
Less: Transfer between
6,790.00
accounts
Loans - Paster Distrib. Co.
2,000.00
Withdrawals - Savings acct.
1,500.00
Decrease of cash on hand
500.00
Collection on loans
385.00
11,175.00
receivable
Net deposits from bus. rects.
$36,241.17
Total outlays per return
$19,316.44
Bank balances beginning of
year
Holton St. State Bank -
Checking account
$ 2,994.28
Savings account
17.41
$ 3,011.69
Deposits
47,416.17
$50,427.86
Less: Bank balances end of
year
Holton St. State Bank -
Checking account
280.67
Savings account
203.61
Pulaski Sav. & Loan
933.58
1,417.86
$49,010.00
Less: Withdrawals - Savings
3,290.00
acct.
Total checks written
45,720.00
Checks to cash
31.15
Capital items
31,736.84
Personal expenses
4,048.37
Life insurance
790.53
Deductible personal exp.
676.67
37,283.56
Total checks for business
8,436.44
exp.
Total business exp. paid by
$10,880.00
eash
Add capital items paid by
21,413.77
cash
Personal exp. by cash (est.)
4,000.00
Total rects. from all sources
72,534.94
Less: Int. recd. - Pulaski
21.00
Savings and Loan
Gross bus. rects. as
$72,513.94
corrected
Gross bus. rects. as reported
50,560.30
Additional business receipts
$21,953.64
Computation of Correct Gross Receipts
Year - 1956
DEPOSITS: Holton St. State Bank -
Checking account
$51,677.19
Less: Check returned
$ 30.00
Deposit error
.50
30.50
$51,646.69
Holton St. State Bank -
Savings account
2,981.51
Pulaski Sav. & Loan Assn. -
Savings account
4,663.27
59,291.47
Less: Transfer between
4,500.00
accounts
Withdrawals - Savings
5,500.00
accounts
Sale of car
500.00
Collection on loans
2,335.00
receivable
Loans - M. Buraczewski -
5,300.00
18,135.00
Paster Distrib. Co.
Net deposits from bus. rects.
$41,156.47
Total outlays from returns
$25,936.63
Banking balances beginning of
year
Holton St. State Bank -
Checking account
$ 280.67
Savings account
203.61
Pulaski Sav. & Loan Assn. -
Savings account
933.58
1,417.86
Deposits
59,291.47
60,709.33
Less: Bank balances end of
year
Holton St. State Bank -
Checking account
$ 117.12
Savings account
185.12
Pulaski Sav. & Loan Assn. -
Savings account
96.85
$ 399.09
60,310.24
Less: Withdrawals - Savings
8,500.00
acct.
Total checks written
51,810.24
Checks to cash
628.89
Capital items
31,906.58
Personal expenses
5,403.71
Life insurance
1,352.99
Deductible personal exp.
751.60
40,043.77
Total business exp. paid by
$11,766.47
check
Total business exp. paid by
$14,170.16
cash
Add capital items paid by
39,994.90
cash
Personal exp. paid by cash
4,000.00
(est.)
Total rects. from all sources
99,321.53
Less: Int. recd. (not
68.67
reported)
Rental receipts
1,175.30
1,243.97
Gross receipts as corrected
98,077.56
Gross receipts as reported
78,170.50
Additional business receipts
$19,907.06
Computation of Correct Gross Receipts
Year - 1957
DEPOSITS: Holton St. State Bank -
Checking account
$62,540.48
Less: Checks returned
273.88
$62,266.60
Holton St. State Bank -
Savings account
3.24
Pulaski Sav. & Loan Assn. -
Savings account
3.88
62,273.72
Less: Decrease of cash on
1,500.00
hand
Collection of loans
1,229.71
2,729.71
receivable
Net deposits from business
59,544.01
rects.
Total outlays per return
33,234.89
Bank balances beginning of
year: Holton St. State Bank -
Checking account
$ 117.12
Savings account
185.12
96.85
$ 399.09
Deposits
62,273.72
Total
$62,672.81
Less: Bank balances at end of
year
Holton St. State Bank -
Checking account
1,968.39
Savings account
188.36
Pulaski Savings & Loan Assn.
-
Savings account
100.73
2,257.48
Total checks written
60,415.33
Less: Checks to cash
$ 105.00
Capital items
26,179.90
Personal expenses
8,395.62
Life insurance
3,485.73
Deductible personal exp.
1,458.98
$39,625.23
Total checks for bus. exp.
$20,790.10
Total business exp. paid by
$12,444.79
cash
Add capital items paid by
19,486.52
cash
Personal expenses paid by
4,000.00
cash (Est.)
Total receipts from all
95,475.32
sources
Less: Interest received
107.12
Rental receipts
4,200.50
4,307.62
Gross bus. receipts as
91,167.70
corrected
Gross bus. receipts as
71,790.00
reported
Additional business receipts
$19,377.70
*68 For the years 1950 through 1953, respondent, using the net worth method, determined understatements of taxable income of $9,600.74, $4,314.23, $5,746.49, and $9,600.74, respectively, and deficiencies in income tax of $2,452.80, $1,047.60, $1,453.79, and $2,352.95, respectively. For the years 1950 through 1952, respondent determined additions to the tax under section 294(d)(1)(A) for failure to file declaration of estimated tax of $239.40, $123.98, and $134.17, respectively, and additions to tax under section 293(b) for the years 1950 through 1953 in the respective amounts of $1,226.40, $523.80, $726.90, and $1,176.48. For the years 1954 through 1957, respondent, using the bank deposits method, determined additional business receipts of $12,931.78, $23,453.64, $20,607.06, and $20,077.70, respectively; deficiencies in tax of $5,880.86, $6,371.21, $12,886.61, and $6,104.86, respectively; and additions to tax under section 6653(b) in the amounts of $3,048.16, $3,185.61, $6,443.31, and $3,052.43, respectively. In addition, for the year 1954, respondent increased income by disallowing depreciation deductions to the extent of $3,515.91, and respondent decreased income by increasing *69 deduction for taxes paid by $18.83 and by reducing capital gains income by $30.23. For 1955, respondent also increased income by disallowing depreciation deductions to the extent of $1,873.14, and decreased income by increasing business loss deductions by $1,050.09 and by allowing deductions for carrying charges in the amount of $1,737.83. For 1956, respondent also increased income by including a $68.67 item as interest income, by disallowing depreciation deductions to the extent of $3,512.07, by disallowing losses on the sale of business assets to the extent of $493.68, and by disallowing deductions of $10,615.73, being the difference between the $22,130.09 cost of games sold deducted by petitioner and the $11,514.36 depreciation for games allowed by respondent. For 1956, respondent decreased income by allowing additional deductions of $1,455 for carrying charges incurred by petitioner. For 1957, respondent also increased income by disallowing depreciation deduction to the extent of $903.78 and by including therein the amounts of $687.81 and $7.12 representing unreported capital gains and additional interest income, respectively. Respondent, also for 1957, reduced income by *70 the amounts of $121.25 and $127.43, representing allowable deductions for carrying charges and rental expenses, respectively, and also reduced income by $500.61, being the excess of deductible expenditures of $1,453.98 made by petitioner for charitable contributions, interest, and taxes, in excess of the standard deduction claimed by petitioner for the year of $958.37. Ultimate Facts There are deficiencies in petitioner's income tax for each of the years 1950 through 1953, some part of which is due to fraud with intent to evade tax. There are underpayments in petitioner's income tax for each of the years 1954 through 1957, some part of which is due to fraud with intent to evade tax. Petitioners for each of the years 1950 through 1956 filed false or fraudulent Federal income tax returns with intent to evade tax. Opinion In the instant case the assessment of any deficiency in tax for the years 1950 through 1956 is barred by the statute of limitations unless the evidence shows that the returns for those years were false or fraudulent with intent to evade tax or for the years 1954 through 1956 that there was an omission of gross income in excess of 25 percent of the gross *71 income reported. The burden of proof in each instance is on respondent. In order to show that the returns were false or fraudulent with intent to evade tax respondent must not only show that the returns falsely understated petitioner's taxable income but must show that such understatement was with the willful intent to evade tax. The evidence clearly shows that there is an understatement of taxable income for each of the years here in issue. For the years 1950 through 1952 the only item of the net worth plus expenditures statement on which respondent based his determination which is not agreed to by the parties is respondent's estimate of petitioner's personal living expenses. In the year 1950 the understatement of taxable income as computed by respondent on the basis of the agreed items of the net worth statement exceeds respondent's estimate of petitioner's personal living expenses for that year. In the years 1951 and 1952 approximately $1,700 and $1,300, respectively of yearly personal living expenses are required to produce an understatement of taxable income. Eugenia Gromacki testified as respondent's witness to expenditures for groceries, utilities, house-furnishings, clothing, *72 and gasoline for personal use of an automobile. It was obvious that she was estimating those expenditures at the lowest figure she felt possibly consistent with the size of her family. She, however, did testify to expenditures in excess of the amounts required to show that petitioners understated their income in each of the years 1951 and 1952. For the years 1953 through 1956 purchases of pinball machines and reserves for depreciation as well as amounts of personal living expenses are not agreed to by the parties. Respondent has proved by clear and convincing evidence sufficient amounts of such expenditures to show understatements of taxable income in each of these years. Furthermore, for the years 1954 through 1956 respondent has shown understatements of income by clear and convincing evidence of bank deposits plus cash expenditures. The evidence is clear and convincing that petitioners' understatement of taxable income was willful and that their returns for each of the years 1950 through 1956 were false and fraudulent with intent to evade tax so that the assessment of a deficiency for those years is not barred by the statute of limitations. The evidence is similarly clear and *73 convincing that a part of the deficiency in or underpayment of the tax for each of the years 1950 through 1957 was due to fraud with intent to evade tax. The evidence shows consistent and sizable understatements of income. The understatements are twice or more the amount of taxable income reported by petitioners. Petitioner dealt largely in cash, collecting coins from the machines and making capital purchases to a large extent in cash. Although petitioner maintained records in the form of receipt books of his coin machine receipts which would reflect his income, these receipt books were never made available to respondent and were allegedly destroyed in a fire at petitioner's house in 1959. Petitioner maintained other records wherein he personally recorded income and expenditures for the years 1954 to 1957. These records, except for minor mathematical errors, were in agreement with the returns filed by petitioner. In early meetings with respondent's agents, petitioner first stated that he had made only one loan during the years here in issue and then admitted he had made one other loan but stated that he had made no additional loans. In fact, he had made a number of other loans. The *74 effect of these misrepresentations was to hide petitioner's assets or true net worth. In evaluating the evidence, the fact that petitioner did not produce his records at the trial pursuant to respondent's subpena and the further fact that petitioner made payments of approximately $100,000 for capital acquisitions in cash, as opposed to check, raises the inference that petitioner was both hiding his books and dealing in cash in order to cover up his true earnings. Petitioner explains his failure to produce his records by stating that his books were destroyed in a fire in his house in December 1959. This does not explain why petitioner did not show his receipt books to the agents during the investigations of his returns in late 1958 and early 1959. Petitioner likewise did not show the agents his card records on his machines which might have shown his cash purchases. Petitioner has offered no explanation of his consistent and substantial understatements of income during the 8 years in issue, except to contend that in 1956 he received a $4,300 loan from his wife's father. We have found as a fact that in 1956 petitioner did borrow $4,300 from Eugenia Gromacki's father. Respondent in *75 his computation of deficiency for 1956 by the bank deposits plus cash expenditures method allowed $5,500 as loans deposited representing loans from Eugenia's father and the Paster Distributing Company. We have found that petitioner received a loan from Paster in 1956 of $1,000 thus reducing the amount allowed by respondent for loans deposited by $200. The consistent understatement of income and the failure to include all of his income in his books and records from which his income tax returns were prepared are two factors which raise a definite inference of willfulness. In Holland v. United States, 348 U.S. 121 (1954), the Supreme Court stated (p. 139): Here, however, there was evidence of a consistent pattern of underreporting large amounts of income, and of the failure on petitioners' part to include all of their income in their books and records. Since, on proper submission, the jury could have found that these facts supported an inference of willfulness, their verdict must stand. [cited case omitted] Furthermore, petitioner's duplicity with respect to listing loans he had made was an attempt on his part to hide his assets. Spies v. United States, 317 U.S. 492 (1943). *76 The conclusion we draw from the entire record is that petitioner's actions were motivated by a fraudulent intent. Petitioner contends that his accountant, Wanta, made out his tax returns and that petitioner relied entirely on the accountant to the extent that petitioner did not even check over the returns as prepared by Wanta when he signed them. Petitioner testified that Wanta came to his office every week to pick up his records, that Wanta recorded the information obtained from petitioner in a set of records maintained by Wanta, and that it was from these records that Wanta prepared tax returns for petitioner. Wanta was deceased at the time of the trial. Wanta's wife contradicted petitioner by testifying that Wanta did not collect records from petitioner every week but rather that he prepared petitioner's returns from information and records supplied by petitioner at the time the returns were to be made out. Petitioner told one of respondent's agents at a conference at the beginning of the investigation that Wanta prepared his returns from the worksheets petitioner maintained. The fact that Wanta had available only such information as was supplied to him by petitioner from *77 the worksheets kept by petitioner is further supported by the fact that the returns for the years 1954 to 1957, made out by Wanta, reconciled almost exactly with worksheet records kept personally by petitioner. The understatements of income in the returns as filed did not result from any errors or omissions on the part of Wanta. Petitioner contends that the understatements of income for the years in issue arose largely from the facts that (1) petitioner deducted excessive amounts as cost of goods sold with respect to the pinball games and as depreciation with respect to the phonographs and (2) respondent determined excessive cost of living expenditures for petitioner and his family. Petitioner takes the position that understatements of income arising from these two sources do not evidence a fraudulent intent. Petitioner points out that on the advice of his accountant the pinball game machines were inventoried and a cost of games sold was claimed against business receipts to determine gross income, in lieu of depreciation deductions, for each of the years in issue. The excessive reductions for both cost of games sold and depreciation for phonograph machines do not affect respondent's *78 determinations for the years 1954 to 1957 at all. For these years respondent computed petitioner's income by the bank deposits plus cash expenditures method, and the gross income so computed was in addition to the gross receipts, undiminished by reductions for cost of goods sold or depreciation deductions, reported by petitioner on his return. For the years 1950 through 1953 the understatements of income were computed on the net worth plus expenditures method and any excessive deductions taken by petitioner for costs of games sold or depreciation could be the cause for the understatements of income determined by respondent. For the years 1951 through 1953 petitioner claimed depreciation deductions for the phonograph machines which were in excess of the increases in the phonograph depreciation reserve which respondent allowed for those years in his net worth computation. However, respondent, in his net worth computation, allowed petitioner credit for the same 3 years for depreciation on pinball games, by way either of increased games depreciation reserve or reduced games inventory, in amounts exceeding those claimed by petitioner as costs of games sold. When the excessive depreciation *79 deductions on phonographs and amounts deducted as costs of pinball games as claimed by petitioner are balanced against the additional depreciation allowances made by respondent on pinball games, the net effect is that for the years 1951, 1952, and 1953 respondent, in his net worth computation, has allowed petitioner more reduction in income due to pinball games and phonographs than petitioner claimed on his return. For the year 1950 petitioner claimed $2,526.20 more either as cost of games sold or depreciation on phonographs than respondent has allowed as additional depreciation reserve. Petitioner's understatement of income for 1950, even excluding the $2,526.20 amount is $7,074.54, which is well in excess of the $1,190.15 taxable income reported by petitioner and the only item in this computation which petitioner contests is the $5,000 estimated cost of living expenses. The deficiencies determined against petitioner, therefore, do not result from excessive deductions with respect to pinball games and phonographs claimed by petitioner, except to the extent of $2,526.20 for the year 1950. Petitioner, of course, has the burden of showing error in respondent's determination of the *80 amount of the deficiencies. Petitioner's net worth for December 31 of the years 1949, 1950, 1951, and 1952 has been stipulated by the parties. His net worth for December 31, 1953, has been stipulated except for the value of pinball games and juke boxes and the amounts of depreciation allocable thereto. Respondent determined the value of pinball games for December 31, 1953, by taking the stipulated December 31, 1952, pinball games figure of $18,484.25 and adding to this amount $10,150 of purchases which the evidence shows petitioner made in 1953. The resulting total of $28,634.25 was reduced by $6,417.25, representing games disposed of or fully depreciated during 1953, a figure not disputed by petitioner, leaving a net amount for this item at December 31, 1953, of $22,217. In determining the December 31, 1953, inventory for phonographs, respondent added to the stipulated December 31, 1952, figure of $9,632.50, the 1953 phonograph purchases of $12,795, resulting in a $22,427.50 total. The $22,427.50 figure was reduced by phonographs sold in 1953 of $500, a figure also not disputed by petitioner, resulting in respondent's December 31, 1953, inventory figure of $21,927.50. Respondent *81 determined depreciation for the pinball games and phonographs on the basis of a useful life of 3 and 4 years, respectively. Petitioner does not contest the use of these useful lives. For the years 1954 through 1957 respondent determined petitioner's income using the bank deposits plus cash expenditures method. Respondent put in evidence bank statements showing deposits to petitioner's checking and savings accounts, schedules showing the amounts and payees of checks drawn against the checking account, records of numerous suppliers from whom petitioner purchased machines, records of banks and finance companies from whom petitioner borrowed money, and records of various insurance companies to whom petitioner made insurance premium payments. By matching payments petitioner was credited with having made, as shown on third-party records, against the checks drawn by petitioner, respondent was able to compute the total payments made by petitioner to third parties in cash. In our findings we have set forth the computations showing petitioner's net bank deposits plus his cash expenditures. The additional income determined for the years 1954 through 1957 by the bank deposits plus cash expenditures *82 method is confirmed by the net worth schedule for the same years, showing comparable increases in petitioner's net worth plus nondeductible expenditures. We have reduced the amount of petitioner's cash expenditures for capital items determined by respondent for the year 1954. Respondent's computation for the year 1954 charges petitioner with having received and paid off two $1,500 loans covering the purchase of equipment from Paster Distributing Co., whereas the record shows there was only one such $1,500 loan. We also have made a $90 increase in the amount of capital goods petitioner purchased from Paster in 1954. Petitioner does not contend there is any error in respondent's bank deposits plus cash expenditures computations or that he had any nontaxable receipts not allowed for in the computations. Petitioner contends that respondent's computations of unreported income for each of the years in issue overstates the amount of his personal living expenditures. Respondent determined that petitioner had personal living expenditures in cash for the years 1950 to 1953 of $5,000, $6,000, $7,000, and $8,000, respectively, and personal living expenditures in cash for each of the years *83 1954 through 1957 of $5,200. Respondent also determined that cancelled checks totaling $3,542.34, $5,514.57, $7,508.30, and $12,618.59 for the years 1954 through 1957, respectively, had been issued in payment of personal expenditures. The cancelled checks for the years 1954 to 1957, made out to department stores and similar payees, constitute convincing proof of personal expenditures. As to the cancelled checks petitioner contends only that respondent improperly lumped in with personal expenses unidentified expenditures by check in amounts totalling $201.60, $1,260.56, $1,932.26, and $685.44 for the years 1954 through 1957, respectively. There is no question that checks aggregating these amounts were drawn by petitioner. However, respondent was not able to identify the payee. Petitioner has made no showing that the checks were for items that were tax deductible. In this state of the record respondent's determination respecting the unidentified checks is sustained since the burden of showing error in this regard in respondent's determination is on petitioner. As for personal expenditures made in cash, respondent based his estimate in part on a cost of living estimate purportedly *84 submitted by petitioner to the State of Wisconsin. Petitioner had five children in 1950 and 1951, six children in 1952 and 1953, seven children in 1954 and 1955, and eight children in 1956 and 1957. The cancelled checks, in evidence for the latter 4 years, and stipulated capital acquisitions, namely, high-priced automobiles during the latter 4 years, indicate a willingness on the part of petitioners to maintain a fairly comfortable standard of living, which willingness we believe likewise applied to the 4 earlier years although to a lesser degree. Petitioner has not made any suggestions as to what figures he considered a reasonable allowance for living expenses paid in cash, other than to say that respondent's determination is excessive. Eugenia Gromacki made some estimates of certain of the family living expenses. In the findings of fact we have included our determination of petitioner's cash personal expenditures. Our finding constitutes a reduction in respondent's determination in all years except 1950 because of decreased expenditures for groceries. We consider the testimony of Eugenia Gromacki with respect to grocery purchases somewhat more persuasive than her other testimony. *85 Petitioner contends that respondent's computations for the years 1954 through 1957 are in error because respondent, in his bank deposits plus cash expenditures computation has charged petitioner with expenditures, mostly business expenditures, in the amounts as reported by petitioner on his income tax returns. Petitioner contends he might have been on an accrual basis of accounting and that the amounts deducted in the various years might have accrued but not have been paid in cash in the year deducted, and further that since the burden of proof is on respondent, he has failed to carry his burden in this regard. The record does not show whether petitioner's returns were filed on the cash or an accrual basis. However, even if petitioner were on an accrual basis it appears that the accrued expenses were actually paid in cash during the same year they were accrued. The parties stipulated petitioner's liabilities as of the end of each of the 4 years and there does not appear therein any liabilities comparable to the items deducted on petitioner's income tax returns for those years. Consequently, petitioner must have paid in cash by the end of the year all the expenses he had accrued *86 during the year. The present case was tried on the theory that petitioner was a cash basis taxpayer. Petitioner has made no showing that the returns were filed on an accrual basis or that the amounts claimed on the returns were not actually paid in the year claimed. The burden of showing error in the amount of the deficiency determined by respondent is, of course, on petitioner. Petitioner also contends that respondent, in his bank deposits plus cash expenditures computations for the years 1954 through 1957, improperly charged petitioner with income of $25,382.39, which represents allowances granted petitioner on the trade-in of used phonographs and pinball games. Petitioner asserts that on these trade-ins or sales he is entitled to recover his cost basis tax free and be taxed only on gains in excess of cost. Petitioner apparently contends that the allowance granted on the machines traded in, in no case exceeded his cost basis and that consequently the entire $25,382.39 trade-in allowance was recovery of cost basis. Under the bank deposits plus cash expenditures method the amount of expenditures made for capital items in any year is a factor in determining gross income. However, *87 respondent, in determining the amount of petitioner's capital acquisitions, reduced total acquisitions by the amount of trade-in credits allowed petitioner, and charged petitioner with capital acquisitions only as to the balance, which represents acquisitions paid for either by check or cash but not by trade-in allowances. Consequently, no part of the $25,382.39 of trade-in credits was charged to petitioner as income but this entire amount was treated as a tax-free recovery of basis by petitioner. Respondent has disallowed depreciation deductions claimed by petitioner for the years 1954 through 1957 in the respective amounts of $3,515.91, $1,873.14, $3,512.07, and $903.78. The record does not show how respondent arrived at these disallowances for the years 1954, 1955, and 1957. For 1956, respondent disallowed depreciation on phonographs in the amount of $3,453.28 and increased income by $10,615.73, being the excess of cost of games sold, claimed by petitioner, of $22,130.09 over depreciation on the pinball games determined by respondent to be allowable in the amount of $11,514.36. For 1956 respondent disallowed depreciation deductions on other property to the extent of $58.79. In *88 his petition, petitioner contested the cost of games sold and depreciation adjustments. However, he did not discuss the issue on brief and apparently has conceded these points. If he has not, he has failed to prove error in respondent's determination. Our determination of the amounts by which petitioner understated his taxable income in each of the years here in issue is shown on the net worth computations for the years 1950 through 1953 as set forth in our findings of fact and on the bank deposits plus cash expenditures computation for the years 1954 through 1957 which is also set forth in our findings of fact. Our decision on the fraud issue makes it unnecessary to consider respondent's alternative consider respondent's alternative contention that for the years 1954 through 1956 petitioner omitted from his returns gross income in excess of 25 percent of the gross income reported by him. Decisions will be entered under Rule 50. Footnotes
1. These facts were stipulated by the parties. A schedule of petitioner's assets, also stipulated by the parties, shows the amount of indebtedness due from Martin and Estelle Burke on December 31, 1956 and 1957 to be $1,380 and $1,100. respectively. The discrepancy between the stipulated payments and the stipulated yearend balances is not explained.↩
2. The stipulated schedule of petitioner's assets, referred to supra, lists the indebtedness due petitioner from La Vigne as of December 31, 1957, to be $1,951.38. The discrepancy between the stipulated repayment and the stipulated year-end balance is not explained.↩
3. The stipulated schedule of petitioners' assets shows the balance due from Lessaro on December 31, 1955, to be $1,500. However, Lessaro testified he repaid petitioners about $300 of this loan in 1955. Respondent has accepted this testimony and, because the $300 receipt is a nontaxable item, has reduced petitioners' unreported income for 1955 by $300.↩